IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

HIU-YEE GOODNOW, )
 )
      Plaintiff, )
 )
v. )
 )
OKLAHOMA DEPARTMENT OF HUMAN ) Case No. 11-CV-54-GKF-FHM
SERVICES, JOHN McCRACKEN, )
JOAN GOIN, STEPHANIE STIE, )
 )
      Defendants. )

## OPINION AND ORDER

Before the court are the Motion to Dismiss of the Oklahoma Department of Human Services ("DHS") [Dkt. #11] and the Motion to Dismiss of individual defendants John McCracken, Joan Goin and Stephanie Stie (the "Individual Defendants"). [Dkt. #20].

Plaintiff Hiu-Yee Goodnow ("Goodnow"), a former employee of DHS, sued defendants for disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act of 2008, PL 110-2008 ("ADAAA") and 42 U.S.C. § 1983.

She asserts claims against DHS for failure to accommodate in violation of 42 U.S.C. §§ 12112(a) and (b)(5) and (2) (First Cause of Action); retaliation in violation of the ADAAA (Second Cause of Action); and wrongful termination in violation of the ADAAA (Third Cause of Action). She asserts 42 U.S.C. § 1983 claims against the Individual Defendants for harassment, retaliation and termination in violation of the ADAAA (Fourth Cause of Action); violation of her

1

constitutional right of due process (Fifth Cause of Action); and violation of her right of equal protection (Sixth Cause of Action).

DHS has moved for dismissal of plaintiff's First, Second and Third Causes of Action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the basis that plaintiff's action against it is barred by the Eleventh Amendment to the U.S. Constitution.

Individual Defendants have moved for dismissal of the Fourth, Fifth and Sixth Causes of Action under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## I. Claims Against DHS

The Eleventh Amendment, as interpreted, bars suits against a state by its own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). Although Congress may abrogate state sovereign immunity under certain circumstances, the Supreme Court in *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 360 (2001), held that Title I of the ADA did not validly abrogate state sovereign immunity, and therefore the Eleventh Amendment bars such suits against states. The Tenth Circuit, applying *Garrett,* has ruled, similarly, that suits by individuals against states for violation of Title I of the ADA are barred by Eleventh Amendment. *Estes v. Wyoming Dept. of Transportation,* 302 F.3d 1200, 1203 (10th Cir. 2002). *See also Tarver v. State of Oklahoma,* 2010 WL 944205 (N.D. Okla. 2010); *Elwell v. State of Oklahoma,* 2011 WL 560455 (W.D. Okla. 2011).

Plaintiff asserts *Edelmen* is not applicable to her claims against DHS because Congress has since passed the ADAAA on September 25, 2008, with an effective date of January 1, 2009. The ADAAA changed the definition of terms related to "disability" to reverse statutory interpretations by the Supreme Court that narrowed coverage.[1] However, the ADAAA is devoid

---

[1] The ADAAA explicitly cites *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999) and *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002) as the cases the amendments are meant to address.

of language purporting to negate the constitutional limitation upon the authority of Congress to abrogate state sovereign immunity recognized in *Garrett.* The court rejects plaintiff's argument that the ADAAA renders *Garrett* moot.

Plaintiff also argues that a work share agreement between the Oklahoma Human Rights Commission and the EEOC constitutes a waiver of sovereign immunity. Plaintiff cites no authority for this proposition, and the court has found none.[2] To the contrary, "[b]y agreeing that a state agency…and a federal agency, the EEOC, share jurisdiction to investigate allegations of employment discrimination, it does not logically, or legally, follow that the State…has consented to suit in federal court." *Walker v. Texas, Office of the Attorney General,* 217 F.Supp.2d 776, 779 (E.D. Tex. 2002).

Plaintiff's claims against DHS are barred by the Eleventh Amendment's grant of sovereign immunity to states.

## II. Claims Against Individual Defendants

### A. Allegations of the Amended Complaint

Plaintiff alleges she timely filed a written complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received notice of her right to sue. [Dkt. #9, Amended Complaint, ¶2]. She contends that she was a qualified employee with disabilities during the period of her employment with DHS within the meaning of 42 U.S.C. § 12102(2) in

---

[2] In support of her waiver argument, plaintiff cites the dissenting opinion by Justice Marshall in *Edelman v. Jordan,* 415 U.S. 651, 695-96 (1974). In *Edelman,* the Supreme Court held the Eleventh Amendment barred a class action against the Illinois Department of Public Aid. Justice Marshall, in dissenting, distinguished between "governmental" and "proprietary" functions of state government, asserting that when a state engaged in a "profitmaking enterprise," a voluntary waiver of sovereign immunity can more easily be found. There the state had agreed to comply with conditions imposed by Congress upon the expenditure of federal funds as part of a federal-state cooperative assistance program for the needy. Plaintiff also cites *Smith v. Oral Roberts Evangelistic Association, Inc.,* 731 F.2d 684 (10th Cir. 1984). In *Smith,* the court held that in a "deferral state" such as Oklahoma, when the complainant initially instituted proceedings with the appropriate state or local agency, the federal filing limitation of 300 days rather than the state-imposed time limitation applied. *Id.* at 690. The Tenth Circuit did *not,* however, hold that a state waives its Eleventh Amendment immunity by choosing to become a deferral state.

that:  (a) she had a physical and mental impairment that substantially limited at least one major life activity; and (b) DHS regarded her as having a substantially limiting impairment.  [*Id.,* ¶6]. She asserts that she was a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(8) in that she was able to perform the essential functions of the position with reasonable accommodation.  [*Id.,* ¶7].  Plaintiff alleges that during her employment she was subjected to harassment in the nature of a series of adverse employment acts directly specifically at her; she was placed into unfavorable working conditions and not permitted to properly carry out the duties of her position; and defendants failed and/or refused to provide a reasonable accommodation for plaintiff's disability and perceived disability.  [*Id.,* ¶8].

In her Fourth Cause of Action, plaintiff asserts a § 1983 claim, alleging defendants "in spite of, and motivated by, Plaintiff's disability, harassed, retaliated against, and terminated her, after refusing to accommodate her disability," in violation of the ADAAA. [*Id.,* ¶¶22-23].  She alleges Individual Defendants "followed a state custom, policy, and practice in so acting" [*Id.,* ¶24]; and she "suffered embarrassment, humiliation, and other forms of mental and emotional distress, loss of income and benefits, together with other financial loss, as a consequence of Individual Defendants' violation of the ADAAA under color of law."  [*Id.,* ¶25].

In her Fifth Cause of Action, plaintiff asserts a § 1983 claim, alleging the Individual Defendants denied her procedural and substantive due process rights in discharging her [*Id.*, ¶¶28-29].  She alleges she "had a protected property interest in maintaining her livelihood" [*Id.,* ¶30]; and she "suffered embarrassment, humiliation, and other forms of mental and emotional distress, loss of income and benefits, together with other financial loss, as a consequence of Individual Defendants' violation of her due process rights under color of law."  [*Id.,* ¶31].

In her Sixth Cause of Action, plaintiff asserts a § 1983 claim, alleging the Individual Defendants denied her right to equal protection "in harassing her, retaliating against her, and discharging her pursuant to DHS custom, policy, and practice unlike the treatment accorded similarly situated DHS employees" [*Id.,* ¶34]. She alleges she "suffered embarrassment, humiliation, and other forms of mental and emotional distress, loss of income and benefits, together with other financial loss, as a consequence of Individual Defendants' violation of her due process rights under color of law." [*Id.,* ¶35].

### B.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the  elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted).  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she

is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *Id*.

### C. Analysis

#### 1. Fourth Cause of Action

Plaintiff's Fourth Cause of Action is for violation of 42 U.S.C. § 1983 based upon Individual Defendants' alleged violation of the ADAAA. The Individual Defendants assert that

plaintiff cannot bring a § 1983 action to enforce the substantive rights created by Title I of the ADAAA.

In *Stevenson v. ISD No. I-038 of Garvin Co., Oklahoma,* 393 F. Supp.2d 1148 (W.D. Okla.), District Judge Robin Cauthron addressed whether plaintiffs could bring a § 1983 action to enforce the substantive rights created by Title II of the ADA. The court noted that the Fifth, Eighth, Ninth and Eleventh Circuits had answered this question in the negative, and the Tenth Circuit had held rights created by the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, were not enforceable through § 1983 against government employees in their official capacity. *Id.* at 1151-52. The court agreed with the Fifth, Eighth, Ninth and Eleventh Circuits. *Id.* at 1152. In so ruling, the court stated:

> Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1536 (10th Cir. 1995). The failure to identify the substantive rights allegedly violated is grounds for dismissal for failure to state a claim. *Id.*
>
> Section 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created an incompatible and comprehensive enforcement scheme. *See Blessing v. Freestone,* 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). For example, the Tenth Circuit has held that § 1983 may not be used to remedy violations of the [Individuals With Disabilities Education Act]. *Padilla,* 233 F.3d at 1273. Similarly, age discrimination claims brought under § 1983 Are preempted by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq. Migneault v. Peck,* 158 F.3d 1131, 1140 (10th Cir. 1998), *abrogated on other grounds* by *Kimel v. Fla. Bd. of Regents,* 528 U.S.62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Section 1983 is also not available to remedy Title VII violations unless there is also an independent basis for that claim, such as an equal protection violation. *Notari v. Denver Water Dep't,* 971 F.2d 585, 587 (10th Cir. 1992); *Polson v. Davis,* 895 F.2d 705, 710 (10th Cir. 1990). "[T]he basis for a § 1983 claim is 'independent' from Title VII when it rests on substantive rights *outside* Title VII—that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII." *Notari,* 971 F.2d at 587. Otherwise, the "precisely drawn, detailed enforcement structure of the later statute must be deemed to preempt the earlier general remedial statute." *Polson,* 895 F.2d at 710.

*Id.*

The court agrees with Judge Cauthron.  Plaintiff's fourth cause of action must be dismissed, as it attempts, impermissibly, to premise § 1983 liability against the Individual Defendants on alleged violation of the ADAAA.

### 2. Fifth Cause of Action

In her Fifth Cause of Action, plaintiff claims the Individual Defendants violated her constitutional right of due process by discharging her.  She contends she has a protected property interest in "maintaining her livelihood."

In order to state a claim for deprivation of procedural due process under the Fourteenth Amendment, plaintiff must allege (1) that she possessed a protected interest such that the due process protections were applicable; and (2) that she was not afforded an appropriate level of process.  *See Camuglia v. City of Albuquerque,* 448 F.3d 1214, 1219 (10th Cir. 2006).

The Supreme Court has recognized that a public employee may have a constitutionally cognizable property interest in continued employment pursuant to state law or if "there is a clearly implied promise of continued employment."  *Bd. Of Regents of State Colleges v. Roth,* 408 U.S.564, 577 (1972).   The court in *Roth* stated:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.
> 
> \* \* \*
> 
> Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

The Oklahoma Personnel Act gives a "permanent classified employee" the right to a pretermination hearing and the right to appeal her discharge. 74 O.S. § 840-6.4, 6.5. New hires, however, are appointed for a probationary period of one year and are not entitled to such protections. 74 O.S. § 840.4.13(D).

Here, although plaintiff alleges she had a "protected property interest in maintaining her livelihood," the Amended Complaint is devoid of any factual allegations supporting this conclusory statement. Plaintiff does not allege she was a permanent classified employee eligible for the protections afforded by the Oklahoma Personnel Act, nor does she allege any other facts supporting a legally cognizable property interest.[3]

The court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly,* 550 U.S. at 555. Plaintiff has failed to state a claim for relief under Rule 8(a)(2) and thus is subject to dismissal under Rule 12(b)(6).

### 3. Sixth Cause of Action

Plaintiff's Sixth Cause of Action is for denial of her right of equal protection under the Fourteenth Amendment. Specifically, plaintiff alleges Individual Defendants, under color of law, "denied Plaintiff her right to equal protection in harassing her, retaliating against her, and discharging her pursuant to DHS custom, policy, and practice *unlike the treatment accorded similarly situated DHS employees.*" [Dkt. #9 at ¶34] (emphasis added). This allegation comprises a "class of one" claim.[4]

---

[3] The Individual Defendants assert, without providing evidence, that plaintiff was a probationary employee.
[4] Equal protection claims typically concern governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland,* 366 U.S. 420, 425 (1961). However, in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564-65 (2000), the Supreme Court recognized than an equal protection claim can in some circumstances be sustained where a plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called "class of one."

9

In *Engquist v. Oregon Dept. of Agriculture,* 553 U.S. 591 (2008), the Supreme Court rejected the applicability of the class-of-one theory of equal protection to public employment decisions. In so ruling, the court recognized the distinction "between government exercising the power to regulate, or license as lawmaker, and the government acting as proprietor, to manage [its] internal operation." *Id.* at 598 (internal quotation and citation omitted). As a result, "the government as employer indeed has far broader powers than does the government as sovereign." *Id.* The court stated:

> Given the common-sense realization that government offices could not function if every employment decision became a constitutional matter, constitutional review of government employment decisions must rest on different principles than review of … restraints imposed by the government as sovereign.
>
> In light of these basic principles, we have often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large.

*Id.* at 599 (internal quotations and citations omitted). The court concluded:

> State employers cannot, of course, take personnel actions that would independently violate the Constitution. But recognition of a class-of-one theory of equal protection in the public employment context—that is, a claim that the State treated an employee differently from others for a bad reason, or no reason at all—is simply contrary to the concept of at-will employment. The Constitution does not require repudiating that familiar doctrine.
>
> To be sure, Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons. But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate.

*Id.* at 606-07. (citations omitted).

Plaintiff's Sixth Cause of Action is not cognizable under *Engquist.*

### III.  Conclusion

For the foregoing reasons, defendant DHS's Motion to Dismiss [Dkt. #11] and the Individual Defendants' Motion to Dismiss [Dkt. #20] are granted.  In his responses to both motions, plaintiff requested that he be given an opportunity to amend his complaint.  Plaintiff is given leave to file a motion to amend his complaint on or before October 21, 2011, with a copy of the proposed amended complaint attached thereto.

ENTERED this 12th day of October, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma